Gabuthebs, J.,
delivered the opinion of the court.
This is an appeal in error from a proceeding in the circuit court of Carroll county, in which the nuncupa-tive will of Mrs. A. P. Thomas was established. We consider the evidence entirely insufficient to sustain the verdict in favor of the paper propounded, or any nuncu-pation by the deceased.
1. The proof does not show that she understood herself as performing a testamentary act, but the contrary. She certainly intended' to dispose of her property by will, such was her wish and purpose for some time before and during her last sickness, as was evidenced by several conversations with her friends. At the time the testamentary act is alleged to have been performed, we cannot regard what occurred as any thing more than a repetition of her wishes and desires on that subject. We cannot believe from the proof, that she had any idea she was making a will. In confirmation of this view, is the fact that ’ she had said the same day not long before, that she “ could not get well, that. she wished to fix up her affairs, but that she was afraid it was too late as every thing had to be recorded.” This mistake as- to the law, would not of course invalidate the *619 act, if sbe indeed considered herself as making her will; but it goes almost conclusively to show, that she did not undertake to do an act verbally, which in her opinion, could only be done by writing, and that recorded. It does not appear that this erroneous opinion of hers was ever removed. If it had been done, it would have been very easily proved. She could not have had reference to any other affairs, which could only be fixed up by record, because it does not appear she had any other. She must have referred to the disposition of her property by will.
It would be of most mischievous tendency, to allow loose conversations, or the bare enunciation of wishes and intentions made by sick persons, to be turned into valid dispositions of property; it would produce frauds and perjuries, and result in the most crying injustice. It is certainly true that there is a great inclination in the minds of friends, surrounding a sick bed, to seize upon almost any thing to control the disposition of property, in persuance of the known wishes of the deceased, especially when it conforms to their ideas of propriety and justice.
But it must be remembered, that by the same rules, the most unjust and improvident bequests would be sustained. The rules on this subject must be general and uniform, and cannot be made to bend to suit particular cases of merit'.
The solemn act of making a will, should be well guarded and clearly made out according to the safeguards set up in the law. Under our laws, where the distribution of property is so equal and just, there is no necessity for overstraining facts and rules to avoid intes *620 tacy. The sick and feeble ought to be carefully guarded against imposition in this important matter, so as to protect those who have natural claims upon them, and to prevent the diversion of their porperty by improper means, from the channel prescribed by the laws of the country. It must clearly appear, that the deceased understood herself at the time, to be making a will. This we think the proof does not show.
2. It would not be sufficient if she did so intend, if the forms and requirements of the law were not complied with. The act of 1784, ch. 22, § 15, C & N., 707, requires, in order to make a nuncupative will good, that it shall be made in the presence of two witnesses, and that they or some of them, shall be specially required to bear witness thereto by the testator himself. There is no proof of any such requirement in this case.' This precaution is intended to guard against the occurrence of mistakes and impositions, resulting from the loose recollection of inattentive bystanders, or any misapprehension as to the intention to make a will, or its provi- " sions if made.
In Baker vs. Dodson, 4 Humph., 343, this clause in the statute was construed not to require a literal conformity in words, but that it is “sufficient, if by intelligent act and language, the testator invoke their special attention to what he is going to say, or to what he has said. If he addresses them and say, “ I wish to make a disposition of my effects,” and go on then and make the factum of said disposition, we cannot say that the statute has not been complied with.”
In that ease, when the two witnesses, Boyd and Hayes, came into his sick chamber, the testator addressed *621 himsef to them, without calling them by name, saying, “I wish to mate a disposition of my effects.” He then proceeded to mate the disposition. Now, if be bad called upon tbem in words to bear witness, their attention would not have been more effectually arrested, and .it would have been adhering too closely to the letter of the statute, in disregard of its spirit and meaning, to have declared that insufficient. '
The charge of the court, in the case before us, goes a good ways beyond this decision. He says, “if the jury find that the said A. P. Thomas made the nuncu-pation, designing that the witnesses present should bear it in mind as her will, and the witnesses did so, it would be her will.” This leaves no meaning or force at all in the part of the statute referred to, and the jury had but one point to consider, and that was whether she made the disposition designing them to hear it, and they did hear and recollect it. This is not correct as a legal proposition, and was on á material, if not the turning point in the ease, and we must think controlled the verdict, because we cannot see any evidence in the record, upon which they could have found for the will, if the law had been correctly charged on that point. In the case of Baker vs. Dodson, the witnesses were specially addressed with the declaration, “I wish to make a disposition of my effects,” and the testator immediately proceeded to do so. In this case the witnesses say “they and others were present in the room, and after a good deal of talk, about her money, and having it brought to her and taken back, &c., without addressing herself to any one or more of them in particular, she continued and made the disposition of her property.” If a case *622 like this could stand the important provisions of the statute referred to, so essential to prevent abuses, it would be entirely nugatory, and such construction would amount to a judicial repeal.
The judgment will be reversed, and a new trial granted.